**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Holly Martenson,                          )   No. CV-09-01314-PHX-NVW
                                          )
              Plaintiff,                  )   **ORDER**
                                          )
vs.                                       )
                                          )
                                          )
RG Financing, et al.,                     )
                                          )
              Defendants.                 )
                                          )
_____   )

        Before the Court is Plaintiff's Motion for Preliminary Injunction, part of which
was previously denied (Docs. 92, 93).

**I.    Background**

        On November 29, 2006, Martenson refinanced her home loan through a mortgage
broker, Buy America Real Estate, by executing a Deed of Trust and Note for which JL
Financing is the beneficiary and lender.  RG Financing is the loan servicer for
Martenson's loan.  In May 2007, Martenson fell behind on her loan payments, and on
June 8, 2009, the property subject to the Deed of Trust was sold at a trustee's sale to JL
Financing.  The factual and procedural history of this case before February 2010 is
described more fully in the Court's January 22, 2010 Order  (Doc. 56).

        On February 5, 2010, the Court enjoined JL Financing and RG Financing from
enforcing a state justice court order granting JL Financing immediate possession of
Martenson's residence (Doc. 62). The preliminary injunction was conditioned upon

Martenson posting a bond in the nominal amount of one hundred dollars because the Court found that "Defendants are more than fully secured by the Property (*Id.*; Doc. 56)." In support of her request for a preliminary injunction, Martenson contended the trustee's sale was unlawful and invalid (Doc. 34 at 4 n.4, 7). One of the findings supporting injunctive relief was that Defendants had not complied with the Deed of Trust's requirement that the lender provide the borrower with notice and thirty days to cure the default (Doc. 56).

On May 6, 2010, JL Financing recorded a Notice of Rescission of Trustee's Deed Upon Sale, which states that the Trustee's Sale and the purported Trustee's Deed Upon Sale are rescinded (Docs. 74 at 6, 74-2 at 43-45).  The Notice also states:

> 3)      THE TRUSTEE has been informed by the Beneficiary that the Trustor has contested the Trustee's Sale and that the Beneficiary desires to rescind the Trustee's Deed recorded upon the foreclosure sale on June 8, 2009, in order to resolve any contest made by the Trustor regarding the sale without acknowledging any fault in the conduct of the foreclosure sale;
>
> 4)      THE EXPRESS PURPOSE of this Notice of Rescission is to return the priority and existence of all title and lien holders to the status quo-ante as existed prior to the Trustee's Sale.

(Doc. 74-2 at 43)  By letter dated May 7, 2010, JL Financing notified Martenson she was in default, itemized the amounts due, and demanded payment of $290,638.34 by June 11, 2010 (Doc. 92, Exh. A).  The amount due includes $49,541.23 for "Legal Fees to enforce Note & Deed of Trust."  (*Id.*)  A Notice of Trustee's Sale for September 29, 2010, also was recorded (Doc. 92, Exh. B).

On August 20, 2010, the Court denied Plaintiff's Motion to Enforce Preliminary Injunction to Enjoin Second Sale of Plaintiff's Home or Alternatively to Modify Its Terms (Doc. 89).  The Court found that Defendants had rescinded the trustee's deed emanating from the disputed trustee's sale and abandoned the trustee's sale in dispute, thus nullifying the predicate for the forcible entry and detainer judgment.  The Court found that Martenson "remains liable for whatever her obligations are and were under the note and deed of trust, but no additional obligations grounded in the rescinded deed of trust sale."  The Court expressly refrained from determining whether the amounts

demanded in the May 7, 2010 demand and cure letter are correct or the amount of the demand invalidated the current notice of trustee's sale because no such claim had been pled.

On August 24, 2010, Martenson moved for leave to file a Third Amended Complaint (Doc. 90). The proposed Third Amended Complaint alleges that the May 7, 2010 Notice of Default includes in its demand interest, fees, taxes, insurance, and costs accrued during the period of JL Financing's record ownership and the period covered by the preliminary injunction and that Defendants "demand illegal, retroactive payments from plaintiff as a condition to cure the 'new' default under threat of sale of her home." It further alleges that "on the first sale of plaintiff's property on June 8, 2009, plaintiff's personal obligation on the note was extinguished under A.R.S. § 33-814(G) and the note and mortgage were merged with the deed vesting JL Financing with fee simple title to the property."

On August 26, 2010, Martenson filed another motion for preliminary injunction. (Doc. 92). The Court denied Martenson's motion in all respects except for her challenge to the inclusion in the cure amount of attorneys' fees incurred in unsuccessfully defending against the first motion for preliminary injunction (Doc. 93).

On September 2, 2010, JL Financing and RG Financing stated that, "for the purposes of the foreclosure sale, scheduled for September 29, 2010, Defendants will stipulate and agree to include only those post-injunction fees in the cure amount," which is $14,978, instead of $49,541.23 (Doc. 95 at 2). They further stated that, alternatively, they "will withdraw any claim for attorneys' fees in the computation of the cure amount necessary for Plaintiff to cure her default and redeem her property, while reserving the right to litigate the amount of fees properly awarded to Defendants in the substantive case filed in this action." (*Id.*)  Martenson did not respond to JL Financing and RG Financing's response that the Court limited to the narrow issue regarding attorneys' fees.

## II.    Analysis

Arizona courts strictly construe deeds of trust and related statutes in favor of the borrower. *Patton v. First Fed. Sav. & Loan Ass'n*, 118 Ariz. 473, 477, 578 P.2d 152, 156 (1978).  Paragraph 21 of the Deed of Trust requires the lender to give notice to the borrower of the default, the action required to cure the default, and a date not less than thirty days from the date of notice by which the default must be cured.  It also provides:

> If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

(Doc. 90-2)

After default, a trustor may reinstate by paying to the beneficiary, trustee, or the trustee's agent the entire amount then due under trust deed, payment of costs and expenses incurred in enforcing the terms of the trust deed, payment of the recording fee for a cancellation of notice of sale, payment of the trustee's fees, and payment of expenses and reasonable attorney fees "incurred in protecting and preserving the beneficiary's interest in the trust property." A.R.S. § 33-813(A), (B).  "On request from the trustor . . . at any time that the trust deed is subject to reinstatement, the trustee shall provide a good faith estimate of the sums that appear necessary to reinstate the trust deed." A.R.S. § 33-813(C).  Upon written request from the trustor, the trustee must inform the trustor of the exact amount necessary to reinstate the trust deed, separately specifying costs, fees, and any other amounts that are required to be paid as a condition to reinstatement of the trust deed. A.R.S. § 33-813(D).  The trustee must provide the information within five days of receipt of the written request unless it is received during the five business days before the day of the sale, in which case the trustee must provide the information "as soon as practicable." *Id.*  Subsection D, however, does not require extension of the period for reinstatement of the trust deed to accommodate providing information regarding the amount of the payment required for reinstatement. *Id.*

1    Thus, under the Deed of Trust, JL Financing was entitled to collect all expenses
2  incurred in pursuing its remedies under the Deed of Trust, including reasonable attorneys'
3  fees.  Under statute, JL Financing was obligated to provide Martenson, upon request, "a
4  good faith estimate of the sums that appear necessary to reinstate the trust deed."  Further,
5  upon written request, JL Financing was required to provide Martenson the exact amount
6  necessary to reinstate the trust deed.  But the request for an estimate or the exact amount of
7  payment does not require the period for reinstatement to be extended nor the trustee's sale
8  to be continued.  Moreover, the record does not show that Martenson made any such
9  request.

10    The May 7, 2010 demand and cure letter provided a good faith estimate of the
11  payment required to cure Martenson's default and set a date not less than thirty days from
12  the date of notice by which the default must be cured.  On September 2, 2010, JL
13  Financing informed Martenson of a reduction in the amount of payment required to cure
14  her default.  Martenson has provided insufficient basis for finding the May 7, 2010 notice
15  of default and demand for cure defective.

16    Therefore, Martenson's Motion for Preliminary Injunction enjoining the sale of her
17  home on September 29, 2010, will be denied.

18    IT IS ORDERED that Plaintiff's Motion for Preliminary Injunction (Doc. 92) is
19  denied.

20    DATED this 17th day of September, 2010.

21

22    _____
                        Neil V. Wake
23                United States District Judge

24

25

26

27

28

- 5 -